UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE ROBINSON

------------------------------------------------------------

JOHN J. BYRNES, JR.,

**08 CIV. 0086**

Plaintiff,

COMPLAINT

-against-

Civil Action
Case No.

STEVEN BRESCIA, Mayor of the Village of
Montgomery, and LINDA CANTIELLO,
ROBERT "RABBIT" KIERNAN,
DARLENE ANDOLSEK, and JOANN SCHEELS,
Constituting the Trustees of the Village Board
of the Village of Montgomery, Lt. JERRY LOMANGINO
of the Village of Montgomery Police Department, and
THE VILLAGE OF MONTGOMERY,

Defendants.

------------------------------------------------------------x

Plaintiff, JOHN J. BYRNES, JR., by his attorney, EDWARD

J. CARROLL, ESQ., complaining of the defendants herein, respectfully shows

this Court and alleges as follows:

**JURISDICTION-VENUE**

1. Upon information and belief, this Court has jurisdiction in that this

action is brought under the authority of Title 42, United States Code, § 1983 and

1985; Title 28, United States Code, § 1331, 1334(a)(1)(2)(3)(4), 1343, 2201, and



−1−

2202.  Plaintiff seeks redress for the deprivation and violation of his

constitutional rights alleging at all times hereinafter mentioned that the

defendants, while acting under color of the State Law, deprived the plaintiff of his

rights, privileges and quality of life secured by the Constitutions of the United

States and the State of New York, including its/their applicable amendments

thereto.  Federal jurisdiction also exists in that this action arises under Federal

Law and is brought pursuant to 28 U.S.C § 1331, and 42 U.S.C. § 1983 in that it

involves a violation of Civil Rights with the matter in controversy exceeding

$20,000.00, exclusive of interest, costs, fees and disbursements. Plaintiff also

seeks the recovery of counsel fees incurred in bringing and prosecuting this

federal action.

2.  This Court also has subject matter jurisdiction to enter preliminary and

final judgments granting plaintiff declaratory and injunctive relief which are

sought herein under Title 28 of the United Sates Code, § 1331, 1343(a) (4), 2201

and 2202 to prevent the further deprivation of plaintiff's Constitutional rights,

privileges, and immunities secured by the Constitution of the United States, as a

result of acts by the defendants made under color of state law; for an order

declaring unconstitutional the discriminatory acts of defendants, and for money

damages necessary to redress the injury caused to plaintiff by the unconstitutional acts of defendants.  Injunctive relief must be granted to plaintiff for the reasons set forth herein in that plaintiff has no plain, adequate or speedy remedy at law. In the event such relief is not granted to plaintiff by this honorable Court, the actions of the defendants have and will continue to cause immediate and irreparable injury to the plaintiff.

3. Plaintiff further invokes the pendant jurisdiction of this Court to also consider claims arising under State Law. Plaintiff alleges that, at all times hereinafter mentioned, the acts by and/or the omissions of the defendants, constituting defamation of character, malicious termination of employment, the malicious publication of untrue, slanderous, libelous and scandalous statements, and intentional infliction of mental distress, together with all other acts complained of herein were committed with gross malice, and were uttered, and/or published within the defendant(s)' scope and in furtherance of their authority as public officers.

4.  That this lawsuit is properly venued in that the acts of the defendants, individually and/or by acting in concert through its, his, her and/or their officers, agents, servants and/or employees occurred within the territorial boundaries of

the Southern District of the State of New York.

5. That the following history of the municipal defendant, acting by its officers and/or through its legislative authority, establishes gross malice and a custom or policy of deliberate indifference to the rights of plaintiff to enjoy his profession and livelihood and a deprivation of those rights which were and still are guaranteed to him as a citizen and public officer of the United States of America.

6. All of the following acts of the defendants have resulted in a confiscatory taking of plaintiff's property rights and/or his "liberty rights" to pursue his occupation and avocation and to continue his profession and/or employment, and/or to hold his tenured position for the purpose of earning a livelihood as "Chief of Police" of the Village of Montgomery Police Force. This taking occurred without just compensation, and/or a hearing, and resulted in a violation of plaintiff's rights to equal protection of the laws and due process afforded him by the Fourteenth Amendment of the Constitution of the United States. The plaintiff is informed and believes that as a result of several well publicized actions involving the plaintiff, his medical condition, and allegations made by the defendants of criminal conduct allegedly involving his being a

–4–

pedophile and seller/purchaser and/or owner of illegal firearms which, due to the actions of the defendants, were published in newspapers of general circulation, that he was not afforded a presumption of innocence by the defendant Village Board members when they voted to demote and remove him from the position of "Chief of Police" after unlawfully changing his designation as such to "Officer in Charge" and that he was treated in a manner differently from similarly situated public servants.

7. Upon information and belief, all of the following acts were done for the purpose of violating the civil rights of the plaintiff and depriving him of his position of "Chief of Police" and/or thereafter unlawfully referring to him as "Officer in Charge" and/or "police officer",  and were done with the knowledge and intent of the defendants to accomplish the foregoing, without any just cause or legitimate reason, but for the sole purpose of depriving plaintiff, without due process, of his position as the "Chief of Police" and/or "police officer", and the right to pursue that livelihood and to obtain just compensation from those positions.  Furthermore, the defendants, at all times herein, acted with knowledge that the publications and statements so made were false, or with reckless disregard if it (they) was false or not.  Therefore, they acted with "actual malice."

## THE PARTIES

8. That at all times herein mentioned, plaintiff, JOHN J. BYRNES JR., was and still is a resident at 100 Washington Avenue, Montgomery, Orange County, New York, 12549, and a citizen of the United States of America.

9. Upon information and belief and at all times herein mentioned, the defendant, STEVEN BRESCIA, was and still is the Mayor of the Village of Montgomery; LINDA CANTIELLO, ROBERT "RABBIT" KIERNAN, DARLENE ANDOLSEK, and JOANN SCHEELS, were and still are Trustees of the Village Board of the Village of Montgomery; and defendant Lt. JERRY LOMANGINO, was and still is a police officer who aided and abetted the defendants, while employed by the Village of Montgomery Police Department, State of New York in the acts complained of herein. All of these defendants acted, and still act in the capacity of those above described positions, and were and still are residents of Counties situated within the territorial jurisdiction of the District Court for the Southern District of New York.

10. That all of the defendant(s)' illegal acts complained of herein, were committed to deprive the plaintiff of his Constitutional rights and were carried out within the scope of the defendant(s)' authority, under color of state law, and in

–6–

furtherance of the defendant(s)' public and/or private positions and duties.

11.  Upon information and belief and at all times hereinafter mentioned, defendant, THE VILLAGE OF MONTGOMERY, was and still is a municipal corporation, incorporated under and by virtue of the laws of the State of New York, with its principal place of business situated at 133 Clinton Street, Montgomery, New York, County of Orange, 12549.

## **FACTUAL ALLEGATIONS**

### **Plaintiff's History Prior to Demotion**

12.  Throughout plaintiff's employment with the Village of Montgomery police force, plaintiff, for over twenty four years, has maintained an outstanding record of excellence and has been recognized, throughout law enforcement agencies and the public, for his meritorious service to his profession. Plaintiff has been loyally and capably employed by defendants and performed his duties as a Montgomery police officer since 1983.

13.  Plaintiff, in that position, has also held the office of "Chief of Police" of the Village of Montgomery Police Force for more than thirteen years.  He is, and has remained, a native of Montgomery, New York after having graduated from Valley Central High School and was and still is a dedicated public servant.

14. As a result of the foregoing, plaintiff at all times herein, was and still is a public employee, vested with rights as "Chief of Police" for the Village of Montgomery Police Department, who may not be removed from, or deprived of that position, nor may he be unlawfully referred to as "Officer in Charge", without legitimate due process which must include initial written charges establishing, if true, valid reasons for such removal, and after a reasonable opportunity, to prepare a defense, a hearing, at which time plaintiff must be granted an opportunity to confront his accuser(s), present evidence, and be heard.

15. During plaintiff's aforesaid employment, plaintiff has owned and operated a private security firm known as "Allstate Security". This business was operated with the knowledge, consent and approval of the defendants, and without any claims of conflict or protest.

16. In March 2006, while so employed by the Village of Montgomery Police Department, plaintiff reviewed numerous police department time sheets in response to complaints from trustee, ROBERT "RABBIT" KIERNAN, that officers in plaintiff's department were working excessive hours. In plaintiff's investigation, he discovered that there was, in fact, one officer, known as JERRY

LOMANGINO, who did appear to have worked excessive hours and more hours than were required under the circumstances.

17.  A comparison of the Village of Montgomery Police Department records with the Town of Fishkill Police Department records revealed that Officer LOMANGINO, on December 25th, 2005, had simultaneously billed each municipality for working, while on duty, on the same dates and times.

18.  During the following Village Board meeting, plaintiff advised Mayor STEVEN BRESCIA, ROBERT "RABBIT" KIERNAN, and the rest of the Village Board members of his findings and advised the board that JERRY LOMANGINO was engaged in an illegal practice commonly referred to as "double-dipping".  Although advised of such criminal conduct, defendant, ROBERT "RABBIT" KIERNAN, in response, and without just cause, reprimanded plaintiff, telling him to "shut up, there will be no more investigation on Mr. Lomangino."  Plaintiff's reply to that defendant was that, as long as he was "Chief of Police", a legitimate investigation of corruption would remain open.  The remaining defendants took no steps to curtail the actions of defendant, ROBERT "RABBIT" KIERNAN.

19.  During a subsequent Village Board meeting, when this issue was again raised, defendant ROBERT "RABBIT" KIERNAN stated he had "approved" of JERRY. LOMANGINO's submission of bills to both the Village of Montgomery and Town of Fishkill although he knew that the Montgomery bills were fraudulent.  Plaintiff advised defendant, ROBERT "RABBIT" KIERNAN that he had no authority to approve such an illegal act.  The defendant became irate and belligerent and began to yell and curse at the plaintiff.  The defendants thereafter, without the knowledge and/or consent of plaintiff, in lieu of prosecuting, and to spite plaintiff, did appoint JERRY. LOMANGINO to the position of Lieutenant in the Village of Montgomery Police Department.

20.  Defendant, LINDA CANTIELLO was formerly an employee of plaintiff's private security firm, Allstate Security, but her employment was terminated on April 18, 2000.  Thereafter, defendant, LINDA CANTIELLO, was elected to the public office of Village Trustee of the Village of Montgomery.  In a public meeting held on April 18, 2006, defendant, LINDA CANTIELLO, without just cause or reason, but instead to retaliate against the plaintiff, utilizing her public office for personal motives, stated, "If it is the last thing I do I am going to get Jack Byrnes out of the Chief's position."

–10–

21. On or about August 2006, Trustee ROBERT "RABBIT" KIERNAN, in an effort to prevent the establishment of a police union, verbally threatened plaintiff that he must stay away from any support for the establishment of a police union. This defendant threatened that he would retaliate against any officer voting for the union, including the plaintiff. Defendant ROBERT "RABBIT" KIERNAN further threatened that "anyone dealing with the union, including you, will have to deal with me" and "if you know what is good for you, stay the fuck out of it".

22. In a later incident during the month of December 2006, ROBERT "RABBIT" KIERNAN threatened a personal friend of plaintiff, John O'Brien, stating "don't you ever let me catch you talking to Jack (Byrnes) or else!" John O'Brien was, at that time, seeking final approval for a Certificate of Occupancy for a building he owned. ROBERT "RABBIT" KIERNAN was on the panel that approved variances required for O'Brien's Certificate of Occupancy at that time and had the ability to deny such certification.

23. Prior to and including August, 2006, plaintiff was compensated, by salary, as "Chief of Police" for the Village Police Department. However, plaintiff's physician informed him that he needed to have an operation for a

herniated navel.  Although his physician recommended that he undergo such surgery immediately, plaintiff, to serve the best interests of the Village of Montgomery, postponed that operation to attend a highly publicized public ceremony, known as "General Montgomery Day".  To insure that he would be available and physically able to attend that ceremony, to maintain public safety, plaintiff rescheduled that operation for a date after the scheduled date of the ceremony.  However, during the month of August, 2006, while in the Dominican Republic, plaintiff's medical condition suddenly worsened, precluding a return to the United States, and his hernia burst requiring immediate emergency surgery. The only surgical procedure available in the Dominican Republic, at that time, was outdated and required more recuperation time than if the surgery had been performed in the United States.

24.  Plaintiff immediately notified defendant, Mayor STEVEN BRESCIA before he was rushed into surgery and remained in constant contact with him thereafter to provide updates as to his condition.  Plaintiff requested a leave of absence from his position for the period before and after the expected dates of his surgery and for the minimum period medically required to ensure the health of plaintiff and his successful recuperation and the defendants had been informed of

–12–

and are or should have been aware of this fact.  At this time, plaintiff was placed on medical leave from the Village of Montgomery Police Department and John Luffman was appointed temporary "Officer in Charge" in plaintiff's absence.

25.  After approximately one week of bed rest, plaintiff was again rushed into surgery because his hernia had returned.  The physicians reopened plaintiff's wound and performed a procedure whereby they scraped the inside of his stomach to stop any further spread of infection that had reached the first stages of gangrene.

26.  After that second surgery, plaintiff was ordered by his doctors in the Dominican Republic not to return to the United States but to remain "in bed" for a minimum of twelve weeks.  During that confinement, a "visiting nurse" was required each day to remove and change the gauze covering plaintiff's open wound.  The drain in his stomach also had to be cleaned out daily to avoid any further complications.  Instead of granting plaintiff's request, defendants arbitrarily imposed on plaintiff a period less than medically required under the circumstances and, although other employees of the Village of Montgomery had been granted such reasonable medical leave.  The defendants, acting individually and in concert, are responsible for the decision to refuse to allow plaintiff

–13–

employment for his tenured salaried position as "Chief of Police". This action is therefore brought against the defendants, ROBERT "RABBIT" KIERNAN and LINDA CANTIELLO individually and in their official capacities and the remaining defendants in their official capacities.

## **Violations of HIPPA**

27. During that time, plaintiff received a telephone call from Alexa James, a reporter for the "Times Herald-Record", who informed plaintiff that Oliver Mackson had been contacted by defendant, trustee ROBERT "RABBIT" KIERNAN who had provided that reporter with the verbatim contents of plaintiff's confidential medical record. Plaintiff was required to provide this information to the defendants, on the condition that it would be held in confidence, and not released for further publication to the general public. When plaintiff inquired of the reporter where she had acquired plaintiff's confidential medical information, protected from disclosure by HIPPA, the reporter replied that trustee, ROBERT "RABBIT" KIERNAN had, without providing any written authorization signed by the plaintiff, released and provided all of plaintiff's medical information to that reporter, knowing that it would be circulated and

published to the public through articles contained in newspapers of general circulation.

28. Between November 2006 and January 2007, confidential medical information, protected from disclosure by HIPPA, was continually released to the media by defendants, without plaintiff's knowledge or consent. This confidential information was subsequently published in various articles in the Times Herald-Record, a newspaper of general circulation, distributed to the general public throughout the State of New York and specifically within the Counties of Orange, Sullivan, and Ulster. A copy of those publications are annexed hereto and made a part hereof collectively as Exhibit "A".

29. Thereafter, in response to plaintiff's complaints of the foregoing, without due process or a hearing, the defendants changed the plaintiff's conditions of employment by substituting an hourly rate of pay for his salary and requiring him to meet minimum hours of employment.

### Plaintiff's Demotion

30. Thereafter, plaintiff recuperated to the extent that he was medically allowed to return to the United States. On December 5, 2006, while plaintiff was still on medical leave and his position was protected by law, without any hearing

or other due process, the defendants, acting as the Village Board of the Village of Montgomery, met in executive session to discuss police matters. Attendance was open only to the defendants, their village attorney, village clerk and acting "Chief" Luffman. Plaintiff timely requested that he also be granted permission to attend this meeting, but defendant, ROBERT "RABBIT" KIERNAN adamantly objected to his participation. Plaintiff attended the meeting over defendant's objections and when the issue of the criminal conduct of JERRY LOMANGINO was again raised, defendant, trustee ROBERT "RABBIT" KIERNAN became irate and pointed his finger in plaintiff's face while screaming, stated, among other threats that, "if I was not a village trustee, you know what I would do to you". Defendant, trustee ROBERT "RABBIT" KIERNAN also fraudulently misrepresented to the Village Board that he had a telephone conversation with JOHN BYRNES JR., in which plaintiff consented and approved of JERRY LOMANGINO being promoted to the position of Lieutenant. This conversation never took place.

31. Despite such threats and intimidation, and the failure of the remaining Village Board members to properly investigate this issue and take appropriate

action, plaintiff continued to pursue this investigation, especially in light of

JERRY LOMANGINO'S appointment as Lieutenant.

32. On January 16, 2007, the Village Board met, and, without any written

charges against plaintiff, or without a hearing, sworn testimony under oath, or the

opportunity to cross examine or call witnesses, or to be heard, the defendants,

without a record demoted plaintiff from his vested position of "Chief of Police",

after unlawfully referring to him as "Officer in Charge", to the lowest level of

"patrol officer", in violation of law and in the absence of due process. The

defendants knew or should have known that their actions both substantively and

procedurally deprived the plaintiff of liberty and property without due process of

law in the following particulars:

a) No Notice of Charges was provided to enable the plaintiff to present his

case.

b) No administrative law judge or hearing officer presided to ensure an

independent and objective finding.

c) No record was made of the proceeding which deprived the plaintiff of

the fundamental right of review.

d) No statements of witnesses were given under oath.

e) Plaintiff was not advised of his right to cross examine witnesses appearing against him.  In fact, no such witnesses even appeared.

f)  The Village Board acted as prosecutor and finder of fact.

g) Despite hearing no evidence which would have proved dereliction of duty, the defendants arbitrarily and capriciously determined that they had sufficient information to summarily demote plaintiff and thereafter to arbitrarily remove him from the work schedule.

  The defendants have no legitimate reason for demoting plaintiff from the position of "Chief of Police" or referring to him as "Officer in Charge" of the Village of Montgomery Police Department.  On the contrary, the refusal of the defendants to continue to employ plaintiff as "Chief of Police", and/or their referral of plaintiff as "Officer in Charge" is arbitrary and capricious and based primarily on his medical condition and his attempts to undertake and complete a legitimate police investigation, which is a duty imposed upon him by law.  The actions of the defendants, including their intentional disclosure of plaintiff's confidential personnel and medical information, and the continuous acts of slander and libel in the public and through newspapers of general circulation alleging plaintiff committed crimes and was a pedophile, are a part of a pattern of

–18–

such actions establishing a reckless disregard and indifference to due process for which punitive damages in an amount deemed reasonable by the Court should be awarded.

33. The defendants, while acting under color of state law, then unlawfully appointed John Luffman in lieu of the plaintiff to the permanent position of "Chief of Police" or "Officer in Charge" of the Montgomery Police Department.

### Post-Demotion: Harassment, Slander and Libel

34. Without authorization, defendants JERRY LOMANGINO and ROBERT "RABBIT" KIERNAN, for the purpose of intimidating plaintiff and causing his termination of employment from the department, then unlawfully copied confidential "C-forms" kept by the Village of Montgomery Police Department and transmitted them to the FBI, together with publishing reckless accusations that plaintiff was guilty of criminal conduct involving the illegal purchase, possession, and/or sale of firearms, although said defendants knew that such accusations were totally false. Defendants also circulated, as rumor, the allegation that plaintiff was smuggling guns overseas, and that plaintiff was involved in illegal international gun purchases and/or sales. These statements were published at a time when said defendants knew that every gun that plaintiff

has ever purchased was properly recorded and  stored in safety deposit vaults in the Village of Montgomery Police Department, or in his personal residence safe and that plaintiff had not committed any criminal act.

35.  That the slanderous statements so made by these defendants were made knowing that these statements would also be published, in writing, by the Times Herald-Record in the following libelous article and read by the general public.

36.  On January 26, 2007, the Times Herald-Record did publish an article that reported that the FBI was investigating gun purchases made by Village of Montgomery police officers while JOHN BYRNES, JR. was head of the department and that the plaintiff was involved in illegal activities.  A copy of that libelous article, which was published in that newspaper of general circulation, was read by the general public, and is annexed hereto and made a part hereof as Exhibit "B".  Three days prior to that publication, Chief Luffman was advised by Mayor STEVE BRESCIA that defendants, JERRY LOMANGINO and ROBERT "RABBIT" KIERNAN were working on a "big case" involving plaintiff, thereby implying that the plaintiff was the target of a criminal investigation.

37.  On or about June 23, 2007, to further intimidate plaintiff and cause him to resign, plaintiff's sister, Carol J. Monroe, was approached by an unmarked police vehicle driving at a very slow rate of speed while she was standing outside of her parked car on Clinton Street in the Village of Montgomery.  The police vehicle continued to pass her very slowly, causing her to fear for her safety and flee.  When she returned to her car, the unmarked police vehicle then pulled up alongside her vehicle, and blocked her from any means of exit.  After an unreasonable delay, the police vehicle then moved and she was allowed to proceed to her father's residence.  During this time, the operator of the unmarked police car continued to harass the plaintiff's sister by stopping, slowing down, and parking beside her vehicle.  After contacting the State Police to report the incident, she learned that the operator of the unmarked police vehicle was defendant, Lt. JERRY LOMANGINO.

38.  On August 12, 2007 while plaintiff was driving his vehicle westbound on River Street in the Town of Montgomery, he encountered defendant, trustee ROBERT "RABBIT" KIERNAN operating his vehicle on that public street while heading eastbound.  Suddenly, the defendant caused his vehicle to cross over into the westbound lane directly in front of plaintiff, and, to avoid a head on collision

–21–

and serious personal injury, plaintiff was forced off the road and onto its

shoulder.  Defendant ROBERT "RABBIT" KIERNAN then pulled his vehicle up

next to plaintiff's parked vehicle and cursed at plaintiff.  Plaintiff pulled back

onto the road and proceeded to his sister's house on Weaver Street to report the

incident.

39.  While traveling eastbound on Weaver Street, plaintiff again observed

defendant ROBERT "RABBIT" KIERNAN operating his vehicle heading

westbound at a high rate of speed.  Again, defendant, trustee ROBERT

"RABBIT" KIERNAN crossed into the eastbound lane directly in front of

plaintiff's vehicle. Fearing a second head-on collision and serious personal injury,

plaintiff again was forced from the road and onto its shoulder.  Defendant then

pulled his motor vehicle up beside plaintiff's vehicle and became verbally

abusive.

40.  On August 16, 2007, at approximately 5:15 P.M., while plaintiff was

standing in front of the Village of Montgomery Police Station and in the presence

of the general public, defendant ROBERT "RABBIT" KIERNAN drove in front

of the station and while operating his vehicle at a slow rate of speed, extended his

arm out of the driver's side window and pointed his finger directly at plaintiff and

shouted "I am going to get you, you fucking pedophile."  Defendant, ROBERT

"RABBIT" KIERNAN then parked in the police station parking lot and while

speaking with Chief Luffman, made a kissing motion in the direction of plaintiff

and pointed at his crotch and said "did you run out of little boys."  He also yelled

towards JOHN J. BYRNES, JR., "You're a pedophile, suck my dick".

41.  The following day, on August 17, 2007, defendant, ROBERT

"RABBIT" KIERNAN, parked his vehicle in the business district of the Village

of Montgomery with a sign affixed to his vehicle's window which stated

"Mothers and Fathers Beware For Your Children, Jack Byrnes is in Town".

42.  On October 10, 2007, during a Village Board meeting, defendant,

LINDA CANTIELLO again stated, "I want Jack Byrnes fired because he will not

be meeting his hours".  Since April, 2007, in an effort to force the plaintiff's

resignation, the defendants have restricted plaintiff to 3 to 4 shifts per month; less

than the required hours, although plaintiff has always submitted his availability

for work.

43.  That the foregoing acts by the defendants were ratified and/or

condoned by the Village Board of the Village of Montgomery and the VILLAGE

OF MONTGOMERY, without any effort to correct, curtail, or ameliorate such illegal conduct by the defendants.

44. That through the foregoing course of conduct of intimidation, the defendants, for the purpose of depriving the plaintiff of his tenured position of "Chief of Police" and livelihood in law enforcement, have, with actual malice, both orally and/or in writing, disclosed confidential medical and personnel information, and published untrue and false, slanderous information, and the publication of the foregoing libelous article concerning the plaintiff accusing him of the commission of crimes and acts of moral turpitude, with total and reckless disregard for the truth of such allegations.

45. That due to the foregoing acts of the defendants, plaintiff, JOHN BYRNES JR., has been deprived of his livelihood, tenured position, and reputation in the community. He has been burdened with unjustified apprehension and unease. He has sustained conscious pain and suffering and he has been damaged in his personal, social, and business life and reputation.

46. That due to the anxiety caused by the defendants' acts, plaintiff, JOHN BYRNES JR.'s medical condition has been substantially aggravated.

–24–

47. Due to the aforesaid ongoing course of conduct by the defendants, plaintiff's employment has been willfully and maliciously terminated, without due process and without any just cause.

48. The reason for such demotion was due to the false and defamatory statements and illegal actions of the defendants which are set forth above.

49. That the defendants knew at the time they recklessly released such privileged and/or false information to the media and general public that the accusations against plaintiff were made for the purpose of causing plaintiff's demotion from "Chief of Police"; and that all the information so released was confidential in nature and not for public dissemination and disclosure.

50. Defendants also knew that their foregoing publications to third parties and the general public, constituted allegations that plaintiff had committed malfeasance and crimes, and their publications would cause plaintiff great expense, inconvenience, public humiliation, economic distress, economic loss, conscious pain and suffering, and injury to his good name, reputation, and in his position as "Chief of Police" and that plaintiff would be required to seek and obtain, at great expense, legal and medical counseling and assistance.

51. As a result of the defendants' unlawful acts and public disclosure of his medical and personnel matter, plaintiff did sustain great expense, inconvenience, public humiliation, mental anguish and pain, emotional distress, and economic loss, conscious pain and suffering and injury.

### AS AND FOR A FIRST CAUSE OF ACTION
### UNDER FEDERAL LAW ALLEGING A VIOLATION
### OF 28 U.S.C § 1331, and 42 U.S.C. § 1983

52. Plaintiff, JOHN BYRNES JR., repeats and reiterates paragraphs 1 through 51 of his complaint with the same force and effect as if their content were fully set forth at length herein.

53. That the aforesaid acts of the defendants entitle plaintiff to a declaratory judgment that the aforementioned discriminatory actions of defendants were and still are unconstitutional.

54. That plaintiff, during the pendency of this action, is entitled to a preliminary, and thereafter, a permanent injunction reinstating him, retroactively as of January 16, 2007, to the position of "Chief of Police", and thereafter restraining defendants from again terminating and/or demoting plaintiff from the position of "Chief of Police" and/or referring to him as "Officer in Charge" without due process.

–26–

55.  That plaintiff is entitled to the reimbursement for all salary payments and other benefits lost by him as a result of the unconstitutional actions of the defendants due to his unlawful demotion from the position of "Chief of Police" in a sum to be determined by this honorable Court.

56.  That plaintiff is entitled to the reasonable costs of attorney fees incurred by plaintiff in this action due to the unconstitutional actions of the defendants which resulted in his unlawful demotion, in a sum to be determined by this honorable Court.

57. That plaintiff is entitled to compensatory damages for all injuries he sustained since January 16, 2007 as a result of his unconstitutional demotion, and he is entitled to exemplary, treble and punitive damages due to the unconstitutional actions of the defendants, in a sum to be determined by this honorable Court, with or without a jury.

### AS AND FOR A SECOND CAUSE OF ACTION UNDER FEDERAL LAW ALLEGING HIPPA VIOLATIONS

58. Plaintiff, JOHN BYRNES JR., repeats and reiterates paragraphs 1 through 28, 32 and 51 of his complaint with the same force and effect as if their content were fully set forth at length herein.

–27–